HIRAM HUTCHINSON *v.* THOMAS V. JOHNSON and others.

If there be a serious question whether machinery in a building is covered by a mortgage, the court will interpose to prevent its removal, until the question can be settled.

The mortgagor should be made a party in a suit raising such question.

Hiram Hutchinson exhibited his bill, sworn to on the 15th of October, 1847, stating, that on the 25th of May, 1846, Ellison Conger, Judson Conger and Alfred Conger, of Newark, were indebted to William McBeth, of that place, in $403 32; to Francis C. Kellinger in $366 72; to George T. Johnson in $344 82; to James E. Bathgate in $230 85; to John Faulks in $282 22; to Henry Faitoute in $135 25; to James R. Bird in $200; to George C. Crane in $126 63, and to Henry Holden, Jr., in $95, making in all $2190 81; and that, being so indebted, the said Ellison Conger, for the purpose of securing the payment of the said moneys, made, executed and delivered to his said creditors, respectively, promissory notes for the said respective amounts, all dated May 25, 1846, and payable, respectively, in one year from that day; and that, further to secure the payment of the said moneys, the said Ellison Conger, with Mary P., his wife, and Judson Conger and Alfred Conger, executed and delivered to one Staats S. Morris, of Newark, in trust for the use and benefit of the said creditors, an indenture of mortgage, dated the same day, whereby they, in consideration of $1, acknowledged to be paid to them by the said Morris, conveyed to him and his heirs forever a certain tract of land and premises therein described, situate in Newark aforesaid, (the boundaries whereof are given in the bill,) being the lands and premises known as the Hope Buildings, together with all and singular the profits, privileges and advantages, with the appurtenances to the same belonging or in anywise appertaining; also all the estate, right, title, interest, property, claim and demand whatsoever of the parties of the first part to the said mortgage of, in, and to the same and every part and parcel thereof, to have and to hold to the

said Morris, his heirs and assigns, in trust for the use and benefit of the said creditors, and with and subject to a proviso, that if the said Ellison Conger, his heirs, &c., should pay the said moneys according to the terms, tenor and effect of the said promissory notes, respectively, the said mortgage should be void ; that the said mortgage was recorded on the 1st of June, 1846.

That afterwards, on the 21st of April, 1847, the said notes, respectively, were indorsed by the said respective payees thereof, and the said mortgage was assigned by the said Morris to Andrew Lemassena ; and that afterwards, on the said 21st of April, 1847, the said notes were indorsed and the said mortgage was assigned by the said Lemassena to the complainant ; that afterwards, to wit., on the 21st of August, 1847, the said notes were passed and the said mortgage was assigned by the complainant to Abraham Denman ; and that afterwards, to wit., on the 7th of October, 1847, the said notes were passed and the said mortgage was assigned by the said Abraham Denman to the complainant ; that the complainant is the bona fide holder of the said notes and mortgage, and is the only person interested therein, and that he procured the same by paying therefor the face of the same, with a deduction of $50 ; and that he has been the real beneficial owner thereof ever since the transfer of the same to the said Lemassena as aforesaid, who, as well as the said Abraham Denman, acted only as his agent and trustee.

That, at the time of the execution and delivery of the said mortgage, the said Hope Buildings therein mentioned were an extensive range of brick buildings, built for the purpose of introducing and erecting therein steam engines, for the purpose of leasing and renting out steam power, to aid in carrying on the manufacture of such products and manufactures as might be made and manufactured by any person therein who should choose to avail themselves of the said power and locate themselves in the said building.

That the said buildings have always derived a great part of their value from being adapted in their construction to contain and employ the said machinery ; that such machinery consists of a steam engine, shafting and such other apparatus, fixtures and machinery as is requisite to afford power in the various parts of

said building, which machinery is built in and incorporated with the said building by means of bolts, walls and mason work; that entire rooms are appropriated, and constructed with a view of being appropriated to said machinery, and that the machinery could never be taken away without tearing down and destroying parts of the said building.

That the debts for the security of which the said mortgage was given were such as were due from the mortgagors to the said creditors, or *cestuis que* trust, for stock by them, severally, from time to time furnished the said mortgagors to enable them to carry on their trade; and that the furnishing such stock was usually considered a cash transaction, and not one of credit; that the persons so furnishing stock to the said mortgagors were, many of them, persons in moderate circumstances, who would seriously feel the loss of such debts; and that, for these reasons, it was the intention, as well of the said mortgagors as of the conveyancer who drew up the said mortgage, that it should afford the said creditors every possible security, and that it should cover all of said machinery; and that such was the understanding of the said creditors at the time of the execution of the said mortgage; and that such were the directions of the said mortgagors to the said conveyancer, Staats S. Morris; and that the said Morris considered that in drawing the said mortgage in its present form he had framed it so as to cover as well the said buildings and machinery as the said land. And the complainant submits that such is the effect of the said mortgage, and that the said machinery was at the time of the delivery of the said mortgage so incorporated and identified with the mortgaged premises as to be a part of the realty; and that the said mortgage, as well from the intention of the mortgagors and the intendment of law as the language of the same, covers the said machinery.

That it has always been understood that the said mortgage covered the said machinery, and that it was part of the estate; that it has been so understood by numerous creditors of the said mortgagors, and, as the complainant believes, by those who are subsequent to him in their mortgages on the said premises; that although many creditors of the mortgagors have had judgments against them, and have sold, by virtue thereof, all their available

property, yet no pretence has ever been made that the said machinery was personal property distinct from the said real estate.

That, before the machinery above referred to and afterwards specified in the bill was placed into and incorporated with the said buildings, the said mortgagors made, executed and delivered to one Mary Jones two mortgages on the said lands and buildings, which were duly acknowledged and recorded, and constituted the first lien on the said lands and buildings ; but, as the complainant is informed and believes, did not in any manner charge, incumber or affect the said machinery.

That the said mortgagors then executed two other mortgages, to secure sums of money therein mentioned, one to Andrew Stark, and the other to Charles A. DeHart, which mortgages were all incumbrances on the said lands and buildings prior to the mortgage of the complainant ; and also executed six other mortgages, to secure the sums therein respectively mentioned ; which six last mentioned mortgages cover the same lands, buildings and machinery as are covered by the complainant's said mortgage ; and which mortgages were given, one to Alfred Mead, one to Thos. V. Johnson, one to Lewis C. Grover, and, as the complainant is informed and believes, assigned by said Grover to said Johnson, one to Staats S. Morris, one to George Lewis, and one to Edward S. Inness and Joseph R. Rollinson ; and which said last six mortgages were recorded, as the complainant is informed, in the order of priority in which they are here stated ; by virtue of which said last six mortgages the said Mead, Johnson, Morris, Lewis, and Inness and Rollinson claim to have some lien upon the machinery which was situated in the said Hope buildings at the time the complainant's mortgage was executed ; but that the said last six mortgages are subsequent to the mortgage of the complainant.

That, on the 14th of April, 1847, a final decree was made in this court in relation to the lands and premises covered by the said mortgages given to Mary Jones, and in relation to no other property, in a certain cause therein depending, wherein the said Mary Jones was complainant, and the said Stark, Johnson, Mor-

ris, Lewis, DeHart, Mead, Inness, Rollinson and others were defendants.

That by the said decree it was decreed that the premises mentioned in the mortgages of the said Mary Jones, the complainant in that suit, but not the machinery mentioned in the mortgages of the said Mead, Johnson, Lewis and others, defendants therein, and which was not contained in the mortgages of the said Mary Jones, should be sold to pay the mortgages of the said Mary Jones, and of such defendants in the said suit as held mortgages on the premises so ordered to be sold, according to the priorities of the same, as settled by the said decree.

That the Sheriff, by virtue of a *fi. fa.* issued on the said decree, did, on the 27th of September, 1847, *sell* and *strike* off, at public auction, to the complainant, the premises so directed to be sold, for $7,000 ; and on the 6th of Octobor, 1847, delivered to the complainant a deed therefor ; that the Sheriff, with the proceeds of said sale, paid off, according to the directions of the said decree, all the mortgages which, as hereinbefore stated, were prior to the mortgage of the complainant, and with the residue of the said proceeds did pay on the mortgage of the complainant the sum of $553 28.

That the said Charles A. DeHart, on or about July 29, 1847, became the purchaser of the said mortgaged premises, for a period of one year, at a sale of the same then made under the provisions of an act of the Legislature, entitled a further supplement to the act incorporating the city of Newark, authorizing the sale of real estate in Newark for taxes ; and that, on or about the 7th of August, 1847, the said Charles A. DeHart procured all the interest by him so obtained to the said premises to be conveyed by the collector of arrears of taxes for the city of Newark to the said Thomas V. Johnson ; and that the said Johnson therupon took possession of the said mortgaged premises, or of such part thereof as contained the said machinery ; that by an act of the Legislature, passed January 26, 1844, provision is made for the redemption, by the lawful owner, of property so sold for taxes, within one year after such sale, by paying or tendering to the purchaser at such tax sale the amount paid by him

for premises so sold for taxes, with an addition at the rate of 12 per cent. per annum thereon from the time of such sale.

That the complainant, after he had received the said Sheriff's deed, and on the 6th of October, 1847, tendered to the said Thomas J. Johnson $106 50 in specie, being the full amount so paid by said DeHart to the said collector for the said property, with the addition of 12 per cent. thereon as aforesaid. That the said Johnson then refused to receive the money so tendered, or to deliver up the deed executed by the collector to him, or to give the complainant possession of the said premises; whereupon the complainant made an affidavit of the said facts, according to the act last aforesaid, and delivered such affidavit to the Treasurer of the city of Newark, and thereupon paid to the said Treasurer the said last mentioned sum of money, who gave the complainant a receipt for the same, annexed to the said affidavit, specifying, in the said receipt, that the said money was paid for the purpose of redeeming the said premises; and gave the complainant such certificate as is required by the said last mentioned act, which certificate, being duly acknowledged by the said Treasurer, was thereupon filed in the office of the Clerk of the county of Essex; and the said Johnson was also informed by the said Treasurer that the complainant had paid him the said sum and the said interest, and that the said Johnson could have the same at any time; by virtue of which premies, the complainant became entitled to the immediate possession of the said mortgaged premises; and that he demanded possession thereof of the said Johnson, who refused to deliver possession to him, and still unlawfully prevents the complainant from taking possession of the said premises.

That the said DeHart, or the said Johnson claiming under him, never acquired by the purchase at the said sale for taxes anything more than a lien on said premises, which lien has now been extinguished by the complainant's having followed the directions of the said act for that purpose enacted; but by reason of the anomalous proceeding by which the said lien is by said act directed to be extinguished, the complainant would be embarrassed, if not entirely defeated, in acquiring the possession of the said premises by the usual remedies for that end afforded in

courts of law. That the said amount of taxes and interest was also tendered to the said Johnson, on the 28th of September, 1847.

That the said Johnson, so having possession of the said premises, on the 4th of October, 1847, undertook to sell at public vendue, in Newark, the said machinery, and gave out at the said sale that he would, immediately on the said sale being made, deliver the said machinery.

That the complainant and the said Abraham Denman, who was then the assignee of the complainant's said mortgage, by F. T. F., their attorney, forbade the sale of the said machinery, because the said Johnson had no authority to sell the same; because the said machinery was so incorporated with the said buildings that it could not be separated therefrom without waste and injury to the said buildings and machinery, and because the mortgage now the property of the complainant was the first lien thereupon; but that Johnson diregarded such notice and proceeded with the sale, and the machinery was struck off for $2,885, either to the said Johnson or to the said Inness & Rollinson.

That the complainant and the attorney of the said Denman demanded of Johnson some writing to show the sum for which the machinery was sold, and who was the purchaser thereof; but that Johnson refused to give any information or any voucher or security in relation to the transaction.

That, on the 6th of October, 1747, Johnson, with a large number of men, commenced to break the walls and mason work of the said Hope buildings, for the purpose of disconnecting the said machinery from the said building, and was so engaged during the whole of that day, and thereby did great damage as well to the said machinery as to the said building.

That Johnson, on the said 6th of October, sent off a large and valuable part of said machinery to the city of New York, and near midnight of the same day was engaged disconnecting and carrying away the residue of the same, and was only prevented from so doing by the order of this court; that the reason of Johnson's making such haste to extricate the said machinery was, that he expected and feared the injunction of this court to

arrest his progress, knowing that he was unlawfully employed; that Johnson has at this time a considerable part of the said machinery on the wharf in Newark, which, together with such machinery as remains in the building, he intends, unless restrained by the injunction of this court, to transport to the city of New York; that, in consequence of said Johnson's so unlawfully selling the said machinery, it sold for a price far below its real value.

That Johnson now holds on to the possession of a large part of the said buildings, without deriving any benefit therefrom, as the same is unoccupied; that the windows of the said buildings are out, and the doors off, and that Johnson will not permit the complainant even to put the said buildings in such situation as to prevent their receiving further damage.

That there is due to the complainant, on his said mortgage, $1,811 63; and that he has applied to the mortgagors to pay the same, and to the said Johnson, Mead, Morris, Lewis, Inness and Rollinson to pay the same, or to release to him all their right, title, and equity of redemption of, in and to the said mortgaged premises, and suffer him peaceably to enter and possess the same.

The bill prays that the defendants may answer the premises, and that Johnson may set forth what machinery he has removed or carried, or suffered to be removed from the said buildings; and that the defendants may be decreed to pay to the complainant, by a short day, what may be found to be due him on the said notes and mortgage; and that, on failure thereof, they may be foreclosed of and from all right and equity of redemption of, in and to the said machinery so as aforesaid situated in the said Hope Buildings at the time of the delivery of the complainant's mortgage, and of all right and title to the said lands and premises so conveyed to the complainant by the said Sheriff, by reason of any pretended lien arising from the purchase of the same by the said DeHart, for taxes, as aforesaid, or from the conveyance by the said Collector to the said Johnson; and may deliver possession of the said machinery, lands and premises to the complainant; and on failure to pay what may be found due to the complainant, that the said machinery may be sold to pay the same, and that Johnson may be enjoined from resisting the complainant in

·taking possession of the said lands and premises so redeemed by him from the lien which the said DeHart and Johnson once had thereon for the money paid by DeHart for taxes on the said premises; and that the said Johnson and Inness & Rollinson, their agents, &c., may be enjoined from injuring the said buildings, and from moving or in any manner disturbing any machinery therein contained, or from taking or removing from Newark any of the machinery which was in the said buildings on the 30th of May, 1846, the time of the delivery of the complainant's said mortgage, or at any time thereafter, and from selling any part of the said machinery; and that it may be referred to a Master to ascertain and report what machinery has been removed from the said buildings by the said Johnson or any other of the defendants, and what was the true value of such machinery immediately before it was removed; and that Johnson, or such other defendant so removing the same, may be decreed to pay to the complainant the value of such machinery before removed with interest thereon, and for further relief. Thos. V. Johnson, Alfred Mead, Staats S. Morris, George Lewis, Edward S. Inness and Joseph R. Rollinson are made defendants.

On the reading of this bill, *F. T. Frelinghuysen* and *Wm. Pennington* moved for an injunction pursuant to the prayer thereof. They cited *Co. Litt.* 53; 2 *Smith's Leading Cases,* 160, 1, 2; *Ib.* 99, 16, 7, 8; 1 *East.* 38; 5 *Peters L. Ab.* 702; 1 *Atk.* 175; 16 *Eng. C. L. Rep.* 61; 7 *Ib.* 272; *Grady on Fixtures,* 8, 13; 1 *H. Bl.* 261.

*O. S. Halsted, jun'r,* and *A. Whitehead,* contra. They cited 3 *Green's Ch.* 148; 1 *John. Ch.* 317; 6 *Ib.* 46; 7 *Ib.* 333; 2 *Green's Ch.* 279; *Hopkins' Ch. Rep.* 135; 17 *John. Rep.* 116; 9 *Coun. Rep.* 63; 3 *Atk.* 13; 5 *Vern. Rep.* 142; 14 *Mass. Rep.* 352; 6 *John. Rep.* 5; *Drury on Inj.* 187.

THE CHANCELLOR. The question is, whether the injunction prayed for should be granted on the facts stated in the bill.

The main question involved is one of great importance, and in reference to which, and to the decisions touching it, it may be said that there is great uncertainty and perplexity. The decision

on the present motion is not founded on any ultimate conclusion on the main question. I go on the ground that the facts stated in the bill, present, in my judgment, a question within the jurisdiction of the Court, and in reference to which a party to this controversy should not be permitted to act on his own construction of the complainant's mortgage, and remove the property claimed to be covered by it out of the jurisdiction of the Court.

To refuse the injunction now, would be to decide, that the complainant cannot, under the facts stated in the bill, or any proofs that may be made by him under the bill, have any lien on the machinery by virtue of his mortgage, because a denial of the injunction would be leaving Johnson at liberty to carry out his design of removing the property out of the State, and thus out of the reach of any decision the court might make on the question whether the complainant has such lien. It is no answer to this to say that Johnson is a man of responsibility. If the complainant has a lien on the machinery, no personal responsibility can be substituted for such lien without his consent.

As to the argument that Johnson was a mortgagee in possession of the machinery, and had, therefore, a right to sell it, this assumes that it was personal and not a part of the realty. It assumes, too, that by his purchase of the realty for taxes he was in possession of the machinery as personal property, and that after Johnson's right in the realty was extinguished by the tender of the amount paid at the tax sale, and the interest thereon, in compliance with the provisions of the statute for redeeming property sold for taxes, he remained in possession of the machinery as personal property; and assumes, that where there are several mortgages on personal property, and one of the mortgagees is in possession, he may sell it at public auction on notice.

If the complainant's mortgage covered the machinery, it is a plain case for the interposition of the court to prevent its removal; and if, under any proofs that may properly be made under the bill, it may appear that the complainant is right in his construction of his mortgage, it is proper that the court should hold the property within its jurisdiction till the question involved can be satisfactorily decided.

An injunction will be allowed.    The mortgagors should be made parties defendants.

Injunction allowed.